## No. 9526.

### THE PEOPLE, EX REL. *v.* BRADLEY, ET AL.

1. CONSTITUTIONAL LAW—*Construction of the Constitution.* Effect is to be given to every word, if possible; and where the intent of a particular word is ascertained, the remander of the provision must be so construed as to accomplish such intent, if the context will reasonably bear such construction.

2. —— *Construed.* Section 13 of article XII of the Constitution was in force from its approval by the People. Legislation was unnecessary to give it effect.

3. WORDS AND PHRASES—*Establish*, construed.

4. EVIDENCE—*Judicial notice*, taken of the history of the legislation concerning the civil service.

*Original Proceeding in Quo Warranto.*

Mr. WILLIAM R. EATON, Mr. RALPH HARTZELL, for petitioner.

Mr. MILTON SMITH, Mr. CHARLES R. BROCK, Mr. W. H. FERGUSON, for respondents.

Mr. N. WALKER DIXON, *Amicus Curiae.*

Opinion by Mr. Justice Denison.

In 1907 the legislature enacted a so-called Civil Service Law, S. L. 1907, Ch. 117; in 1912 this was amended by an initiated law, S. L. 1913, p. 682; in 1915 the legislature passed a new act and repealed all the others, S. L. 1915, p. 143; and in 1918 the people passed the constitutional amendment now before us for construction, which styles itself section 13 of article XII.

This amendment provides—qualifications for appointment to the civil service,—what offices shall be within the classified service,—and for tenure of office and removal of officers and employes in that service.

It then says:

"Laws shall be made to enforce the provisions of this section and to establish a State Civil Service Commission to consist of three members, who shall be appointed for overlapping terms by the Governor alone and who shall be of known devotion to the merit system."

It further provides for the tenure of office of the commissioners, their salary and powers,—for appropriation and for payment of salaries and expenses, in case no appropriation is made,—and as to retention in office of classified servants when the amendment takes effect. The final clause reads "This section shall be self-executing."

After the amendment had been proclaimed, which was done December 31st, 1918, His Excellency Governor Gunter, on January 9th, 1919, appointed the respondents under its terms.

After the accession of His Excellency to the present Governor, and on the 31st day of January, 1919, he appointed the relators under the act of 1915. Possession of the office was refused them by the respondents, and thereupon they bring this original action of *quo warranto* in this court. The respondents answered and the petitioners demurred to the answer.

The contention of the relators is that the amended section is not self-executing, that it nowhere creates a commission or authorizes its creation except by act of the leg-

islature, that it plainly and definitely requires an act of the legislature "to establish a State Civil Service Commission," that until that is done no such thing exists and no one can be appointed commissioner. As to the final clause, "This section shall be self-executing," they say that the provisions of the amendment are not such as to be self-executing, and that since they cannot be executed without the action of the legislature the statement that they are self-executing does not and cannot make them so.

Notwithstanding the great force of these arguments we are constrained to the opposite conclusion.

The word "Self-executing" means capable of fulfillment without the aid of any legislative enactment; 12 Corp. Jur., 629, Sec. 106. A constitutional provision is self-executing when "ancillary legislation is not necessary." *Lyons v. Longmount,* 54 Colo. 112, 117, 129 Pac. 198, 200.

The word "establish" has several meanings. Its original and etymological meaning is to make firm or sure or stable and this is proper and ordinary; it also has a use just as proper and perhaps more ordinary, that is, to create or set up.

The former is consistent with the final clause of the section but the latter is not. By the familiar rule of construction we must give the effect to every word if we can and must so construe the remainder of the section as to accomplish such purpose if it will reasonably bear such construction. In other words, the people by their mandate have said this law should be self-executing and they must be obeyed unless obedience is impossible. We must, then, say that "establish" here means to make firm or stable, not to create, because that is inconsistent with the final clause.

Examining the amended section we see that if it be obeyed by the Governor and everyone except the legislature, there will be a State Civil Service Commission in operation, with members duly appointed, their tenure of office powers and duties defined, their minimum salaries fixed and

payment thereof and of the commissioners' expenses, provided for by directing appropriations and requiring the officers of the State to pay them in case no appropriation is made, which it is their duty to do, and with nothing left for the legislature but to do what they can to enforce the amendment and secure the commission in its position. Execution without ancillary legislation is therefore possible and consequently obligatory.

It has been suggested that some of the provisions other than the one above quoted are self-executing and that the final clause may be given effect upon them.

There are two answers to that proposition.

First; the clause *"This section* shall be self-executing," means the whole section. If there could be no commission without legislation then none of the section would be self-executing, because in that case nothing could be done under any part of the amendment until the legislature should act, and

Second: If parts are to be taken, the provision that the three commissioners shall be appointed by the Governor is as manifestly capable of execution without ancillary legislation as any other part, indeed it has been acted upon and the commission is now in operation; it is, then, self-executing, and it was possible, and consequently right, for the Governor to appoint without ancillary legislative enactment.

The relators would so construe the sentence first above quoted as to make obedience to the rest of the section impossible, and then have us hold that therefore the final clause is to be disregarded.

The respondents would so construe the quoted sentence as to give force to the final clause and so make obedience to the whole section possible. We cannot doubt which is right.

In addition we may take judicial notice of the history of the legislation concerning the civil service.

Before the act of 1912, legislatures were occasionally hostile to the merit system and refused appropriation to support the commission. The act of 1912 was initiated to compel appropriations and to remedy other defects and did so. By the act of 1915, however, which repealed all former laws, the legislature, from the standpoint of those especially devoted to the merit system, destroyed much of its beneficial effect, and the constitutional amendment was initiated accordingly for the very purpose of avoiding the destruction or emasculation of the law in the future by some possible hostile General Assembly.

These are matters which should be taken into consideration in construing the amendment in question.

The demurrer should be overruled and petition dismissed.

Demurrer overruled; petition dismissed.

Garrigues, C. J., Allen, J., and Burke, J., dissent.