Richard Anderson HORRELL, Hyneatha H. Jones, Doris Lucas, Douglas Mitchell, Larry A. Page, Ivy Thomas, Hattie L. Thompson, and Colorado Association of Public Employees, Jack Ashley, and C.W. Peterson, Plaintiffs–Appellants,

v.

DEPARTMENT OF ADMINISTRATION, Colorado Janitorial Service, Inc., Metropolitan Building Maintenance Corporation, Jefferson County Community Center for Developmental Disabilities, Inc., Platte River Industries, Inc. and Danguard Services, Inc. of Colorado, Defendants–Appellees.

No. 92SA303.

Supreme Court of Colorado, En Banc.

Oct. 25, 1993.

Rehearing Denied Nov. 15, 1993.

Vonda G. Hall, Denver, for plaintiffs-appellants.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Maurice G. Knaizer, Deputy Atty. Gen., Laurie Rottersman, Asst. Atty. Gen., Denver, for defendants-appellees.

Justice KIRSHBAUM delivered the Opinion of the Court.

The appellants, seven present and former state employees (hereafter the employees); the Colorado Association of Public Employees (hereafter CAPE), a non-profit organization which represents state employees in employment issues; and C.W. Peterson, a Colorado taxpayer, appeal the trial court's summary judgment dismissing their claims of constitutional misconduct filed against the appellees, the Colorado Department of Administration (hereafter the Department), and five private corporations.[1] The trial court determined that the employees had failed to exhaust available administrative remedies; that the Department's conduct did not violate the Civil Service Amendment, article XII, section 13, of the Colorado Constitution; and that a statute requesting the Department to enter into contracts for custodial services with certain community groups did not constitute substantive legislation in violation of article V, section 32, of the Colorado Constitution. We reverse and remand the case to the trial court for further proceedings.

I

The Department is responsible for supervising maintenance of certain state-owned buildings and grounds. § 24–30–102(1)(h), 10A C.R.S. (1988). Prior to 1987, the em-

---

1. The appellants filed their appeal with the court of appeals. Pursuant to that court's request, we accepted jurisdiction of the case. *See* § 13–4–110(1)(a), 6A C.R.S. (1987).

ployees were state classified employees employed by the Department to provide custodial and security services at and in several of those buildings.

In 1987, the General Assembly adopted a footnote to the appropriations bill for fiscal year 1988 that stated as follows: "The Department is requested to contract for custodial services from community programs serving developmentally disabled persons, insofar as such services are available." Ch. 1, sec. 2, 1987 Colo.Sess. Laws 1, 4, 12 n. 9, 91. As a result of this legislation, the employees were terminated or transferred to lesser paying positions by the Department and the Department, through its Purchasing Division, entered into contracts with the five corporate appellees for custodial and security services at those buildings.[2]

This civil action was filed in November 1987. The complaint alleged that because of the contracts some of the employees lost their jobs and others were transferred to less remunerative positions, resulting in loss of income, loss of seniority, loss of opportunity for advancement and loss of other benefits to which they were entitled as certified employees of the state personnel system.[3] The complaint contains two claims: that the conduct of the appellees violated the Civil Service Amendment, article XII, section 13, of the Colorado Constitution and that if such conduct were authorized by the footnote included in the appropriations statute, the footnote violated article V, section 32, of the Colorado Constitution. The complaint contained a request for a declaratory judgment, pursuant to C.R.C.P. 57, declaring that the appellees' conduct was prohibited by the Colorado Constitution and that the above-described contracts were illegal, null, and void. The employees requested additional relief in the form of a mandatory injunction directing the Department to reinstate them to their former positions and to reimburse them for lost wages and benefits. The complaint also contained a claim for attorney fees. The appellees individually filed motions for summary judgment.

On October 4, 1988, the trial court granted motions for summary judgment in favor of three of the corporate appellees: Jefferson County Community Center for Development Disabilities, Inc.; Platte River Industries, Inc.; and Danguard Services, Inc. of Colorado. On November 13, 1989, the trial court entered summary judgment in favor of the Department and dismissed with prejudice all claims asserted by the employees. The trial court concluded that the employees had failed to exhaust their administrative remedies before filing this civil action and, therefore, the trial court lacked jurisdiction to consider their claims. After determining that CAPE and Petersen had standing to assert their claims, the trial court concluded that article XII, section 13, of the Colorado Constitution did not prohibit the Department from hiring independent contractors to perform custodial and security services in the state-owned buildings and that the footnote to the appropriations act did not constitute substantive legislation in violation of article V, section 32, of the Colorado Constitution. The trial court subsequently certified its

---

**2.** According to the deposition testimony of John Ivy, the Department had to obtain contract services because the appropriations bill contained no personnel funds for some 27 full-time equivalent positions. For governmental budgeting purposes, one full-time equivalent position represents one position approved for an entire fiscal year.

**3.** Included among the original parties who filed the complaint was Jack L. Ashley, a taxpayer of the State of Colorado. The trial court dismissed Ashley's claims without prejudice on October 4, 1988, pursuant to a motion filed by Ashley.

The complaint also contains claims against Colorado Janitorial Service, Inc. and Metropolitan Building Maintenance Corp. Those defendants failed to file an answer or otherwise plead their position. On July 17, 1990, the appellants filed a motion for entry of default judgment against those two defendants, which was later withdrawn. According to a minute order dated November 18, 1990, the trial court entered judgment against Colorado Janitorial Service, Inc. and Metropolitan Building Maintenance Corp. and certified that judgment pursuant to C.R.C.P. 54(b).

summary judgments as final, pursuant to C.R.C.P. 54(b).

## II

### A

■ Summary judgment is a drastic remedy and will be granted only if the evidence clearly establishes the absence of any genuine issue of material fact. *Dominguez Reservoir Corp. v. Feil*, 854 P.2d 791, 795 (Colo.1993); *Peterson v. Halsted*, 829 P.2d 373, 375 (Colo.1992); *Cung La v. State Farm Auto. Ins. Co.*, 830 P.2d 1007, 1009 (Colo.1992). *See* C.R.C.P. 56. There are no genuine issues as to any material facts with respect to the issues before us. We therefore may address the questions of law reached by the trial court.

### B

The employees contend that the trial court erred in dismissing their claims for failure to exhaust administrative remedies by filing protests to their terminations with the State Personnel Board (hereafter the Board). They acknowledge that in general failure to exhaust available administrative remedies will bar a plaintiff's attempt to obtain judicial review of executive agency action, but argue that in this case their claims fall within the exception to the rule providing that a plaintiff need not exhaust administrative remedies when administrative relief is inadequate or futile. We agree with this argument.

■ A plaintiff's failure to exhaust administrative remedies may deprive a court of jurisdiction to grant the requested relief. *Gramiger v. Crowley*, 660 P.2d 1279, 1281 (Colo.1983). It is well established that "[w]here administrative remedies are provided by statute, the statutory procedure must be followed when the matter complained of is within the jurisdiction of the administrative authority." *Denver–Laramie–Walden Truck Line, Inc. v. Denver–Fort Collins Freight Serv., Inc.*, 156 Colo.

366, 370, 399 P.2d 242, 243 (1965). This rule prevents piecemeal application for judicial relief and unwarranted interference by the judiciary in the administrative process. *See Moschetti v. Liquor Licensing Auth.*, 176 Colo. 281, 285, 490 P.2d 299, 301 (1971).

■ The policies of avoiding fragmented adjudication of issues and conserving judicial resources that support the requirement of exhaustion of administrative remedies are not furthered, however, when available administrative remedies are ill-suited for providing the relief sought and when the matters in controversy consist of questions of law rather than issues committed to administrative discretion and expertise. *Collopy v. Wildlife Comm'n*, 625 P.2d 994, 1006 (Colo.1981); *see Hamilton v. City and County of Denver*, 176 Colo. 6, 11, 490 P.2d 1289, 1292 (1971). Thus we have recognized that a party need not exhaust available administrative remedies "when the administrative agency does not have the 'authority to pass on the question raised by the party seeking judicial action.'" *Fred Schmid Appliance & Television Co. v. City and County of Denver*, 811 P.2d 31, 33 (Colo.1991) (quoting *Gramiger*, 660 P.2d at 1281).

The claims for relief asserted in the complaint filed in this case require a determination of the facial constitutionality of legislation that eliminates funding for twenty-seven full-time equivalent positions in the Department and requesting the Department to contract with private employers for the services previously provided by the employees. The complaint did not allege that the Department acted contrary to or in excess of its legislative authority. Rather, it raised two constitutional issues for adjudication: whether the Department's conduct in contracting for custodial and security services violated article XII, section 13, of the Colorado Constitution and whether the request contained in the appropriations statute violated article V, section 32, of the Colorado Constitution. Both of these issues are questions of constitutional law.

The employees specifically state in the statement of facts section of their brief that the Department entered into contracts with private vendors for custodial services historically performed by state classified employees as a result of the appropriations bill. The Department does not contest this characterization of the facts. To address either of the employees' claims, therefore, it is necessary to determine whether the legislation under which the Department acted was, on its face, unconstitutional.

During oral argument the appellees suggested that the employees were actually seeking job reinstatement and back pay and that such personnel matters are particularly suited to the administrative expertise of the Department and the Board. However, while the employees requested injunctive relief to regain their former positions, some of them have apparently been assigned to other state positions and may no longer request reinstatement to their former jobs. Questions of appropriate damages were not addressed by the trial court in light of its ruling with respect to the exhaustion issue. Whatever remedies might ultimately be awarded to particular employees in this particular case, all questions of liability raised by the complaint require not an examination of personnel policies or practices but a determination of the facial constitutionality of legislation. No administrative expertise is necessary for or relevant to resolution of this question.

■ The Board has no authority to determine whether acts of the legislature are constitutional on their face.[4] In *Vivian v. Bloom*, 115 Colo. 579, 177 P.2d 541 (1947), we considered limitations on the powers of the Civil Service Commission then autho-

rized by article XII, section 13, of the Colorado Constitution to hear appeals arising from personnel actions. *Id.* at 583–84, 177 P.2d at 543. In so doing, we made the following pertinent observations:

> [T]he [Civil Service] Commission is a body of special and limited jurisdiction with no powers except such as the laws of its creation have given it.... "The Commission cannot exercise any power that is not expressly conferred by the power that created it, and cannot assume an enlarged power by making its own rules." ... Unless by specific provision or necessary implication, the power formerly vested in the Assembly has been transferred to the Commission by the [Civil Service] amendment, it still remains in the Assembly.

*Id.* at 583–84, 177 P.2d at 543 (citations omitted). *See also Dempsey v. Romer*, 825 P.2d 44, 52 (Colo.1992).

When the civil service provisions of the Colorado Constitution were amended in 1970,[5] the authority to hear appeals of personnel actions previously vested in the Civil Service Commission was transferred to the newly-created Board.[6]

The parameters of the Board's authority are delineated in sections 13 and 14 of article XII of the Colorado Constitution as follows:

> The state personnel board shall adopt, and may from time to time amend or repeal, rules to implement the provisions of this section and sections 13 and 15 of this article, as amended, and laws enacted pursuant thereto, including but not limited to rules concerning ... grievance procedures, appeals from actions by appointing authorities, and conduct of hearings by hearing officers where authorized by law.

---

**4.** The Board, of course, may evaluate whether an otherwise constitutional statute has been unconstitutionally applied with respect to a particular personnel action.

**5.** H.R. Con.Res. 1019, 47th Leg., 1st Reg.Sess., 1969 Colo.Sess. Laws (enacted Nov. 3, 1970, effective July 1, 1971).

**6.** *See Dempsey*, 825 P.2d at 53 ("The current constitutional provisions [art. XII, §§ 13(8), 14] establishing the authority of the [State Personnel] Department and the director do not differ materially from the former constitutional provisions establishing the Commission.").

Colo.Const. art. XII, § 14(3). Article XII, section 13(8), of the Colorado Constitution dealing with conditions of employment and termination of classified service employees provides that "[a]ny action of the appointing authority under this subsection shall be subject to appeal to the Board, with the right to be heard thereby in person or by counsel, or both." These constitutional grants of authority to the Board to hear appeals are reflected in the statutes governing the state personnel system and state employees. §§ 24–50–101 to –143, 10B C.R.S. (1988 & 1993 Supp.). *See Dempsey v. Romer*, 825 P.2d at 47–48.

■ None of the constitutional and statutory provisions delineating the authority of the Board suggest that it may enter an order declaring that a statute, on its face, violates state or federal constitutional provisions. The Board's authority is limited to consideration of actions taken by state agencies and appointing authorities pursuant to legislation or executive rules governing such actions.[7] The Board has no authority to evaluate the facial constitutionality of statutes adopted by the General Assembly or of executive conduct in administering statutes.

■ The appellees assert that the Board was empowered to decide the employees' claim that contracting for services with private sector vendors violated the Civil Service Amendment. In support of their argument, the appellees note that in *Colorado Ass'n of Public Employees v. Department of Highways*, 809 P.2d 988 (Colo.1991), a similar claim was presented to the Board and eventually appealed to this court. That case is distinguishable, however. The petition filed with the Board in that case raised issues that were independent from the constitutional concerns it raised. In this case, the question of the facial validity of the statute must be determined before any questions concerning remedies can be answered. Furthermore, the question of whether the plaintiffs were required to assert their constitutional claims before the Board did not arise in *Department of Highways*.

Because the Board did not have the authority to determine the two constitutional issues asserted by the employees here, it could not resolve all the issues raised by the employees.[8] We conclude, therefore, that the trial court erred in concluding that the doctrine of exhaustion of administrative remedies required dismissal of the claims asserted by the employees.

## C

The appellants assert that the Department's conduct in contracting with private corporations for the performance of duties historically conducted by state classified personnel violates the Civil Service Amendment to the Colorado Constitution, article XII, section 13. We agree in the circumstances of this case.

Article XII, section 13, establishes the personnel system of the state. Subsection one provides that appointments and promotions to "offices and employments" in the system must be made according to merit and fitness, which is "to be ascertained by competitive tests of competence without regard to race, creed, or color, or political affiliation." Colo.Const. art. XII, § 13(1).

---

7. *See Renteria v. State Dept. of Personnel*, 811 P.2d 797, 801 (Colo.1991) ("the plain language of Article XII, Section 13(8) ... limits the Board's appellate authority to review of an action 'of the appointing authority.' *See also* Art. XII, § 14(3) (section authorizes Board to enact rules regarding 'appeals from actions by appointing authorities').").

8. Because the Board could not decide the constitutional issues raised by the complaint, it is not necessary to determine whether, as the appel-lees assert and the appellants dispute, the Board had the authority to reinstate those employees who were terminated from state employment by the Department. Moreover, the Board had no jurisdiction to consider the claims of CAPE and Peterson. In view of our conclusion that the employees were not required in the circumstances of this case to file claims with the Board, we need not address the appellees' arguments that Peterson lacked standing to seek the declaratory relief he requested.

Subsection two defines the system as comprising all appointive public officers and employees of the state, and includes certain exceptions not applicable in this case. Colo. Const. art. XII, § 13(2). Subsection eight sets forth the requirements for holding a position within the system and provides the framework for dismissing or disciplining an employee. That subsection provides in relevant part as follows:

> Persons in the personnel system of the state shall hold their respective positions during efficient service or until reaching retirement age, as provided by law.... A person certified to any class or position in the personnel system may be dismissed, suspended, or otherwise disciplined by the appointing authority upon written findings of failure to comply with standards of efficient service or competence, or for willful misconduct, willful failure or inability to perform ... duties, or final conviction of a felony or any other offense which involves moral turpitude, or written charges thereof may be filed by any person with the appointing authority, which shall be promptly determined. Any action of the appointing authority taken under this subsection shall be subject to appeal to the state personnel board, with the right to be heard thereby in person or by counsel, or both.

Colo.Const. art. XII, § 13(8).

The Civil Service Amendment was adopted in response to legislative hostility towards a merit-based civil service. *See People ex rel. Clay v. Bradley,* 66 Colo. 186, 190, 179 P. 871, 872 (1919). "[S]ince 1919, this court has recognized that this amendment embodies the strong disposition of the people of Colorado to protect the state civil service system from 'destruction or emasculation of the law in the future by some possible hostile general assembly.'" *Colorado Ass'n of Pub. Employees v. Board of Regents,* 804 P.2d 138, 145 (Colo. 1990) (footnote omitted) (quoting *Bradley,*

66 Colo. at 190, 179 P. at 872); *see also Colorado State Civil Serv. Employees Ass'n v. Love,* 167 Colo. 436, 446, 448 P.2d 624, 628 (1968).

██ In this case, the Department, without specific legislative direction and in the absence of applicable regulations, elected to obtain services previously performed by classified state employees from private sector entities. In *Colorado Ass'n of Public Employees v. Department of Highways,* 809 P.2d 988 (Colo.1991), we addressed a contention substantially similar to the one raised by the appellants here. In that case, CAPE and several state employees employed by the Department of Highways filed a petition for a declaratory order with the Board, alleging that the attempt by the Department of Highways to contract with private sector vendors for services previously performed by state employees violated article XII, section 13, of the Colorado Constitution. The Board dismissed the petition, finding no constitutional violation. On appeal, we stated that "[b]ecause privatization so directly implicates both the personnel system as a whole and the specific protections accorded state personnel system employees under article XII, § 13(8), standards regulating privatization must be established by legislation, regulation, or some combination of the two." *Department of Highways,* 809 P.2d at 995. Having found no statute or rule setting forth standards for contracting for the services at issue, we concluded that the Department of Highways could not constitutionally contract with the private vendors.

At oral argument the appellees conceded that *Department of Highways* controlled this case and required reversal of the trial court's judgment dismissing the employees' claims. We agree, and conclude that the trial court erred in holding that the Department's conduct did not violate article XII, section 13, of the Colorado Constitution.[9]

In light of this conclusion, we do not address the question of whether the chal-

---

**9.** The appellee Platte River Industries, Inc. contends that because it is a private non-profit

corporation it cannot violate art. XII, § 13, of

lenged footnote to the 1987 appropriations statute constituted substantive legislation in violation of article V, section 32, of the Colorado Constitution.

### III

For the foregoing reasons, we reverse the judgment of the trial court and remand the case to that court for further proceedings.

MULLARKEY, J., dissents.

ROVIRA, C.J., and SCOTT, J., join in the dissent.

Justice MULLARKEY dissenting:

The majority opinion holds that the employees were not required to exhaust their administrative remedies. It then proceeds to examine whether the Department of Administration's conduct violated article XII, section 13, of the Colorado Constitution (the Civil Service Amendment). I disagree with the majority and would hold that the employees were required to exhaust their administrative remedies. Because the employees failed to do so, this court should not consider their claim that the Department of Administration's actions violated the Civil Service Amendment. Under my approach, however, we must then address the constitutionality of the footnote to the 1987 "long bill," or general appropriations statute. I find *Colorado Ass'n of Public Employees v. Department of Highways*, 809 P.2d 988 (Colo.1991), to be dispositive on that issue, and I would hold the footnote unconstitutional. Therefore, I respectfully dissent.

### I

In Part IIB of the opinion, the majority holds that the individual employees were not required to exhaust available administrative remedies because the State Personnel Board (the Board) does not have the authority to determine facial challenges to the constitutionality of legislation. However, by treating all of the employees' claims in this case as "facial" in nature, the majority ignores the traditional distinction between constitutional challenges to a statute on its face and challenges to a statute as applied. In my view, this characterization of the employees' claims as purely facial challenges is erroneous and unduly restricts the Board's constitutional and statutory authority to handle personnel disputes. The employees here seek reinstatement to their former positions with back pay. This can be nothing but a claim that the long bill footnote, as interpreted by the Department of Administration and applied by the Department to these employees, is unconstitutional under the Civil Service Amendment. I believe that the exhaustion rule is still applicable and bars the employees' claims for reinstatement and back pay.[1]

A party need not exhaust available administrative remedies when the agency does not have the authority to decide the issue raised. *Gramiger v. Crowley*, 660 P.2d 1279, 1281 (Colo.1983). This rule has been applied when the constitutionality of a statute which the agency seeks to administer is challenged as facially invalid. Bernard Schwartz, *Administrative Law* § 8.37, at 518 (2d ed. 1984). *See also Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975); *Arapahoe Roofing & Sheet Metal, Inc. v. City and County of Denver*, 831 P.2d 451, 454 (Colo.1992); *Kuhn v. State Dept. of Revenue*, 817 P.2d 101, 104 (Colo.1991), *cert. dismissed,* —— U.S. ——, 112 S.Ct. 1925, 118 L.Ed.2d 533 (1992); *Clasby v.*

---

the Colorado Constitution. We leave that determination for the trial court on remand.

**1.** The employees may have standing as taxpayers to seek declaratory relief. My point is that their failure to pursue administrative relief in a timely manner is fatal to their request as employees for reinstatement and back pay.

*Klapper,* 636 P.2d 682, 684 (Colo.1981); *Kinterknecht v. Industrial Comm'n,* 175 Colo. 60, 67, 485 P.2d 721, 724 (1971). Administrative review is unnecessary under these circumstances since "the administrative process is unlikely to contribute anything to the resolution of the challenge." Schwartz, § 8.37, at 518.

However, not every constitutional issue defeats the exhaustion requirement. *Johnson v. Utah State Retirement Office,* 621 P.2d 1234, 1237 (Utah 1980). *See also Renegotiation Bd. v. Bannercraft Clothing Co., Inc.,* 415 U.S. 1, 20, 94 S.Ct. 1028, 1038, 39 L.Ed.2d 123 (1974). On the contrary, courts still require exhaustion when a party challenges the constitutionality of a statute as applied by an agency. Schwartz, § 8.37, at 519. *See, e.g., W.E.B. DuBois Clubs of America v. Clark,* 389 U.S. 309, 88 S.Ct. 450, 19 L.Ed.2d 546 (1967), *reh'g denied,* 390 U.S. 913, 88 S.Ct. 814, 19 L.Ed.2d 886 (1968); *Abbott v. Burke,* 100 N.J. 269, 495 A.2d 376 (1985); *Matters v. City of Ames,* 219 N.W.2d 718, 720 (Iowa 1974).

The reasons for requiring exhaustion in the case of an "as applied" challenge are obvious. A court should not determine whether a statute is unconstitutionally administered before the available avenues of administration have been explored by the agency. Schwartz, § 8.37, at 519. *See also Metcalf v. Swank,* 444 F.2d 1353, 1357 (7th Cir.1971), *vacated on other grounds,* 406 U.S. 914, 92 S.Ct. 1778, 32 L.Ed.2d 113 (1972). Courts would also be put in the difficult position of deciding constitutional questions in a factual vacuum. *DuBois Clubs,* 389 U.S. at 312, 88 S.Ct. at 452.

In applying these principles to the facts of this case, the majority treats the entirety of the employees' complaint as a facial challenge to the constitutionality of the appropriations statute. Based on this characterization, the majority then easily concludes that exhaustion is unnecessary since the Board "has no authority to determine whether acts of the legislature are constitutional on their face." Maj. op. at 1198.

The majority fails to explain, however, why each of the employees' claims for relief requires "a determination of the *facial* constitutionality of legislation." *Id.* at 1197 (emphasis added). In fact, the employees' complaint challenges the 1987 long bill footnote both on its face and as applied. In one claim, the employees argue that the footnote *itself* violated article V, section 32, of the Colorado Constitution. This is clearly a facial challenge to the constitutionality of the statute. The employees' other claim for relief, although constitutional in nature, is very different. In this claim, the employees assert that the Department of Administration's decision to privatize (or to contract out custodial services previously provided by the employees), violated the Civil Service Amendment. This claim is a challenge to the constitutionality of the footnote as applied to the employees by the Department of Administration.

Whereas the employees' facial challenge to the footnote itself may have excused a failure to exhaust administrative remedies, their challenge to the statute as applied to them by the Department of Administration does not. Resolution of this latter claim is not purely a question of law requiring no administrative expertise. Instead, it requires factual determinations concerning what the Department of Administration in fact did. Determinations such as these should be made first by the administrative officials who are especially equipped to inquire into the facts. Schwartz, § 8.37, at 519. *See also Brunetti v. Borough of New Milford,* 68 N.J. 576, 350 A.2d 19, 26 (1975).

We have also recognized that the Board has an essential role in elaborating upon the framework of the state personnel system contained in the Civil Service Amendment. *Colorado Ass'n of Public Employees v. Department of Highways,* 809 P.2d 988, 993 (Colo.1991). In fact, the Board was specifically created to establish rules implementing the constitutional provisions

pertaining to civil service. *See* Colo.Const. art. XII, § 14(3). Privatization in particular implicates the personnel system as a whole, requiring standards established by statute or Board rule. *Department of Highways*, 809 P.2d at 995. Given the Board's expertise in this matter, it is the most appropriate entity to initially determine whether an agency or appointing authority has violated the Civil Service Amendment.

The *Department of Highways* case illustrates the procedure that the employees involved in the present case should have followed if they wished to assert claims for reinstatement and back pay. Like the employees now before us, the *Highways* employees lost their jobs because the agency contracted with private vendors for the services formerly performed by the state employees. *Id.* at 990. The Department of Highways relied on various statutory authorities for its actions. The employees and CAPE challenged the terminations by appealing to the Board and later seeking judicial review of the Board's adverse decision. One of the issues they raised was the constitutionality of a statute. *Id.* at 990 n. 1. By pursuing their administrative appeal rights in a timely manner, the *Highways* employees preserved for judicial review *all* constitutional issues, both facial and applied. Here, the employees have abandoned their "as applied" claims by failing to appeal to the Board. They have lost their claims to reinstatement and back pay.

In the past, we have held that a party cannot circumvent time limitations on the right to administrative review through artful pleading where the prescribed avenue of relief is adequate. *See Clasby*, 636 P.2d at 684. However, the majority opinion would lead to such a result. In the future, a party can simply bypass the personnel system by framing his or her dispute as a "facial" challenge to the constitutionality of a statute. This conclusion is unsound as

a matter of public policy, and would render the Board's authority meaningless.

The Board had the authority to consider the employees' Civil Service Amendment claim. Therefore, this is not a case in which the employees' administrative remedies were inadequate or in which complete relief could not have been obtained. Since the employees failed to exhaust the administrative remedies available to them, I would affirm the trial court's judgment with respect to the employees' claims.

II

Having determined that exhaustion was not required, the majority proceeds to examine whether the Department of Administration violated the Civil Service Amendment. In light of its conclusion that the Department's conduct was unconstitutional, the majority declines to address whether a footnote to the 1987 long bill constituted substantive legislation in violation of article V, section 32, of the Colorado Constitution. Since I believe that the employees failed to exhaust their administrative remedies, the court should not consider the constitutionality of the Department's conduct. However, we must address the facial validity of the footnote to the long bill.

The Department of Administration's decision to contract out custodial and security work to private firms allegedly stems from a provision contained in a footnote to the 1987 long bill. This footnote provided that "[t]he Department is requested to contract for custodial services from community programs serving developmentally disabled persons, insofar as such services are available." Ch. 1, part I n. 9, 1987 Colo.Sess. Laws 1, 91. The legislature also reduced the number of custodial FTE's,[2] but provided funds for the contracting out of those services.

The trial court determined that the legislature's "request" was not mandatory and

2. An "FTE" is a "full time equivalent," meaning one person employed full time for one year.

Ch. 1, sec. 1(10), 1987 Colo.Sess. Laws 1, 3.

was not, therefore, substantive legislation violating article V, section 32, of the Colorado Constitution. This court does not need to reach the merits of the substantive legislation contention, however. Even if the footnote did not constitute substantive legislation, it was constitutionally invalid under our decision in *Department of Highways*. When the long bill was enacted, there were no standards in existence by which the privatization plan could be implemented. *See Department of Highways*, 809 P.2d at 995. Therefore, the trial court judgment with respect to this issue should be reversed.

Accordingly, I respectfully dissent.

I am authorized to say that Chief Justice ROVIRA and Justice SCOTT join me in the dissent.